U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2024 SEP 18 PM 2:57

BY _____
CLERK
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

| | | |
|---|---|---|
| **KRISTY CRAWFORD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:  2:23-cv-00752-gwc** |
| | ) | |
| **MONSANTO COMPANY;** | ) | |
| **SOLUTIA, INC.;** | ) | |
| **PHARMACIA, L.L.C.;** | ) | |
| **PHARMACIA, INC.; and** | ) | |
| **PHARMACIA CORP.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## STIPULATED PROTOCOL FOR THE PRODUCTION OF DOCUMENTS AND ESI

The parties in the above-captioned litigation (collectively, "the Parties"), by and through their respective counsel, have stipulated and agreed to give effect to this Stipulated Protocol for the Production of Documents and Electronically Stored Information ("Production Protocol"), and request the Court enter it.

**I.    Scope**

A.    This Production Protocol shall govern the production of hard copy documents and other physical materials ("Hard Copy Documents") and Electronically Stored Information ("ESI") by the Parties in the above-captioned matter (the "Litigation"). The Production Protocol shall also govern productions made by any third party who is subpoenaed in this Litigation, unless otherwise agreed to by the issuing party and the third party. Accordingly, this Production Protocol shall be attached to any subpoena issued in this Litigation.

B.    The Production Protocol does not alter the scope of discovery permitted by Federal Rule of Civil Procedure 26(b) or preclude any party from moving the court for a protective order under Rule 26(c) or an order compelling discovery under Rule 37.

C.     The Parties incorporate the provisions of the Stipulated Protective Order.

D.     Nothing in this Production Protocol establishes any agreement regarding the subject matter or scope of discovery in this Litigation, or the relevance, authenticity, or admissibility of any Documents or ESI.

E.     Nothing in this Production Protocol shall be interpreted to require production of Documents or ESI protected from disclosure by the attorney-client privilege, work product doctrine, or any other applicable protection or privilege. Nor shall this Production Protocol be interpreted to require production of Documents or ESI prohibited from disclosure under any similar law, regulation, rule, or court order. The Parties do not waive any objections to the production, discoverability, or confidentiality of Documents, ESI, or any other discovery materials, including but not limited to: objections regarding the proportionality of the discovery request or the burden, overbreadth, or relevance of Documents, ESI, or any other discovery materials.

F.     Any practice or procedure set forth herein may be varied by written agreement of the Parties.

## II.     Definitions

A.     "Parties" means the named Plaintiff and Defendants to this Litigation.

B.     "Producing Party" shall refer to any person or entity producing, including by making available for copying and inspection, information, Documents, ESI, discovery responses, or testimony in connection with this Litigation.

C.     "Receiving Party" shall refer to any person or entity receiving information, Documents, ESI, discovery responses, or testimony in connection with this Litigation.

2

D.      "Document" means all written, recorded or graphic matter whatsoever, including, but not limited to, materials produced pursuant to Federal Rule of Civil Procedure 34, by subpoena or by agreement, deposition transcripts and exhibits, interrogatory answers, responses to requests for admission, and any portion of any Court papers that quote from any of the foregoing.

E.      "Custodian" means an individual or entity repository that has administrative control of ESI or Documents.

F.      "Native File" means a file saved in the format of the original application used to create that file.

## III.    Production Format – Electronically Stored Information ("ESI")

The Parties will produce ESI in TIFF format according to the following specifications:

A.      **<u>Imaged File:</u>**

1.      Single-page 1-Bit Group IV TIFF images shall be provided using at least 300 X 300 DPI resolution and 8 ½ X 11 inch page size, except for documents requiring different resolution or page size. The Requesting Party retains the right to request a TIFF image in a higher resolution or larger page size if necessary to render the image legible or reasonably usable. Each image shall have a unique file name, which is the Bates number of the Document. Original Document orientation shall be maintained (*i.e.*, portrait to portrait and landscape to landscape). TIFFs will show any and all text and images which would be visible to the reader using the native software that created the Document.

2.      The Producing Party will selectively identify which of its color-containing Documents should be produced in color including, but not limited to, any images (unless only appearing in a company logo, email signature block or similar), graphs,

charts, maps, Autocad files, photographs, posters, government reports, and Documents containing text in different colors. These selected colored Documents will be produced in JPEG format. If an original Document or ESI item contains color text, markings, or graphics, and it is necessary to see those items in their original color to understand the full meaning or content of the Document or ESI, and the Producing Party has not already provided that Document or ESI item in color, then the Receiving Party may, in good faith, request that the Document or ESI item be produced in color format. The Producing Party will not unreasonably deny such a request.

3.   Hidden content, tracked changes or edits, comments, notes, and other similar information viewable within the Native File shall also be imaged so that such content is viewable on the image, provided that the hidden material is not privileged, protected, or otherwise precluded from production.

4.   The Producing Party will brand all TIFF images in the lower right-hand corner with a Bates number that shall always: (1) be unique across the entire document production, (2) maintain a constant length (zero/0-padded) across the entire production, (3) contain no special characters or embedded spaces, (4) be sequential within a given document, and (5) stamped onto the TIFF image in such a manner that information from the source document is not obliterated, concealed, or interfered with. Productions made after entry of this Production Protocol must not contain "PCB" or "Monsanto" in the Bates prefix/numbers. If a Bates number or set of Bates numbers is skipped in a production, the producing party will disclose the Bates numbers or ranges in a cover letter accompanying the production. The

Producing Party will brand all TIFF images in the lower left-hand corner with "Confidential" designations, as needed, in accordance with the Stipulated Protective Order.

B.   **OCR or Extracted Text File:** Each individual Document based on an electronic file shall be accompanied by a corresponding text file with text that is extracted from the electronic file.

1.   Each text file must be at Document level.

2.   The text file name shall be the same name of the first image page for the Document set, followed by .txt.

3.   An OCR or Extracted text file containing the produced Document's content including Hidden content, tracked changes or edits, comments, notes, and other similar information will be provided for all Documents whether it is produced as an image file or as a Native File.

4.   Electronic text must be extracted directly from the Native File format unless the Document was redacted, an image file, or a Hard Copy Document. In these instances, a text file created using OCR will be produced in lieu of extracted text. This text file shall be created prior to any production branding (including but not limited to Bates numbers and Confidentiality designations), unless the image is produced with redactions. Extracted Text and OCR for documents produced without redactions shall not contain the Bates and confidentiality branding designations.

5.   There should be a single extracted/OCR text file per Document.

6.   Do not include extracted/OCR text as a field in the metadata load file.

7.   The UTF-16 Unicode character set should be used for all extracted/OCR text files

in a production.

C.  **Metadata Fields and Processing:** Each of the metadata and coding fields set forth in Section III.K.3 that can be extracted from a Document shall be produced for that Document. The Parties are not obligated to populate manually any of the fields in Section III.K.3 below if such fields cannot be extracted from a Document, with the exception of the CUSTODIAN, DUPLICATE CUSTODIAN, REDACTED, and PRIVILEGED fields, which shall be populated by the Producing Party.

**Search.** To the extent a producing party wishes to use search terms, technology-assisted review, or other electronic search methodologies to cull documents from review and production, the parties shall meet and confer and attempt in good faith to reach agreement regarding the search methodology.

D.  **E-mail:** E-mail shall be collected in a manner that maintains reliable E-mail metadata and structure. Whenever possible, E-mail shall be collected from the Producing Party's E-mail store or server. Metadata and "header fields" shall be extracted from E-mail messages. In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize threading or "email thread suppression." As used in this Production Protocol, email thread suppression means employing commercially acceptable methods to reduce production of duplicative email threads by producing only the inclusive email messages and their attachments from each email thread. An email message is inclusive when it contains any non-duplicative content or has a document or set of documents attached that does not appear elsewhere within the email thread. Typically, an inclusive email will be either the longest, most recent in time email message containing all of the text from previous, earlier in time email messages within that same thread or an email message with attachments not otherwise attached to a later in time email within

6

that same thread, but any email will be treated as inclusive when it contains non-duplicative content. Accordingly, exact duplicates of emails as well as email messages comprised of text identical to text contained within an inclusive email in the same conversation will be suppressed and not produced; however, responsive, non-duplicative attachments will be produced along with their conveying email message even when the text of that parent email message is fully represented in a longer, later in time email thread.   Upon reasonable request with respect to specifically-identified emails, the producing party will produce metadata associated with the lesser-included email and/or produce a less inclusive copy.

E.   **De-Duplication:** "Duplicate ESI" are exact duplicates based on the files' MD5 or SHA-1 Has Value. The Parties may dedupe documents including within each Custodian or globally (i.e., across all Custodians). This will result in the Producing Party needing to produce only a single copy of responsive Duplicate ESI, provided that all other Custodians of the Duplicate ESI are listed in the DUPLICATE CUSTODIAN and DUPLICATE FILE PATH fields. The Producing Party agrees that the presence of a Custodian's name listed in the CUSTODIAN or DUPLICATE CUSTODIAN field is evidence that a duplicate of the Document was located in that Custodian's file. The Parties shall de-duplicate stand-alone documents against stand-alone Documents and shall de-duplicate top-level email Documents against top-level email Documents. De-duplication shall not break apart families. No Document that is the parent or an attachment of a produced Document may be withheld as a duplicate.

F.   **Time Zone:** Time zones for all documents should be consistent and should be standardized across all documents. All ESI should be processed with a single time zone and a date and time setting that is consistent across all of the Party's productions.

7

G. **Compressed Files:** Compression file types (e.g., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a manner that ensures a container within a container is decompressed into the lowest uncompressed element resulting in individual files. The container file itself shall not be produced.

H. **Native Files:** The Parties will produce the following ESI types in Native File format: (a) spreadsheets such as Excel files or .CSV files; (b) audio/video files; (c) PowerPoint presentations; and (d) any files that cannot be imaged, except when the Producing Party requires the production of databases or other similar ESI under paragraph III.L below.

1.  Any file produced in Native File format need not be imaged. Instead, Native Files will be produced together with a single page placeholder TIFF image. The placeholder TIFF will state that the Document was produced natively and displaying the starting Bates number to the Native File and any confidentiality designation (if applicable);

2.  A unique Bates number and confidentiality designation (if applicable) shall be used as the file name;

3.  The Native File format Documents shall be accompanied by reference information that sets forth for each Document, sufficient information to allow the Parties to track and authenticate the Native File format Document produced, including: (i) the name of the Custodian from whom the Native File is produced; (ii) any appropriately calculated "MD5Hash Value"; (iii) the original name of the file; and (iv) the file extension;

4.  If media files are maintained in a non-standard format, the Parties will meet and confer on the proper method for production of non-standard media file formats; and

5.     If a spreadsheet requires redactions, the Producing Party shall redact by overwriting the data contained in a particular cell, row, column, or tab of a production copy of the spreadsheet with the word "REDACTED" (or similar designation). These documents will be identified as redacted within the Redaction metadata field. If the producing party deems it necessary to produce redacted spreadsheets in any format other than Native, the Parties should meet and confer before such a production is made.

6.     If a PowerPoint presentation requires redaction, the Producing Party may produce the presentation as TIFF images with speaker notes and "hidden" slides as extracted by the software used to process the documents. Color PowerPoint presentations requiring redactions shall be produced as JPEG, and black and white PowerPoint presentations requiring redactions shall be converted to black and white TIFF images, provided that proper grayscale printing is enabled to ensure that any dark colored text is not hidden by dark objects/drawings around the text. If the PowerPoint or slide program contains video or audio components, the video or audio will be produced as native files with the appropriate attachment relationships.

I.     **Text Messages, Mobile Application Data and Collaboration Software Programs** (Teams/Slack).  The Parties will meet and confer to discuss the format of production of these data types. The Parties recognize that there is a wide variety of capabilities available, and it is difficult to assert a standard into a protocol without information as to each Party's capabilities.

J.     **Password-Protected Files:** The Producing Party will take reasonable steps to unencrypt any discoverable ESI that exists in encrypted format (e.g., password-protected) and that can be reasonably unencrypted based on industry standards for production.

K.  **Image Load/Unitization Files:** An image load file/unitization file, in a standard Opticon format (OPT) or LOG litigation support image load format, shall accompany all document images and provide:

    1.    the document number for each image;

    2.    the full path name(s) of each image file;

    3.    the document boundaries for each document;

    4.    the load file shall be in the order that appropriately corresponds with each image file; and

    5.    the following represents the format of a standard OPT or LOG image load/unitization file:

```
Bates,Volume,PATH_to_image,Document Break,Folder Break,Box
Break,Total_Pages.

M_0100000,06150101,\06150101\0000\0001.TIF,Y,,,l
M_0100001,06150101,\06150101\0000\0002.TIF,Y,,,l
M_0100002,06150101,\06150101\0000\0003.TIF,Y,,,1
M_0100003,06150101,\06150101\0000\0004.TIF,Y,,,2
M_0100004,06150101,\06150101\0000\0005.TIF,,,,
M_0100005,06150101,\06150101\0000\0006.TIF,Y,,,l
M_0100006,06150101,\06150101\0000\0007.TTF,Y,,,4
M_0100007,06150101,\06150101\0000\0008.TIF,,,,,
M_0100008,06150101,\0615010l\0000\0009.TIF,,,,,
M_0100009,06150101,\06150101\0000\0010.TIF,,,,,
```

L.  **Associated delimited metadata database:**

    1.    A delimited text file (either standard Concordance .DAT or comm delimited .CSV) containing the fields listed in the table included in Section III.K.3 below should be provided. The delimiters for the file can be Concordance defaults, but defined delimiters are acceptable: Comma - ASCII character 20 ( ); Quote - ASCII character 254 (þ); Newline - ASCII character 174 (®)

2.    The fielded data should include the metadata fields identified in Section III.K.3 for a file/Document in addition to the unitization (including the production number of the first and last page of each Document) and attachments (including information sufficient to identify the parent and child relationships of all Documents that are or have attachments). The first line of the data load file should contain the field headers indicating the contents of each field, and each subsequent line should contain the fielded data for each Document.

3.    The following metadata fields should be provided for each Document for which the information can be extracted.

| FIELD NAME | FIELD DESCRIPTION | EXAMPLE/FORMAT |
|---|---|---|
| BEGBATES | Beginning production number for a given file/Document | ABC0000001 |
| ENDBATES | Ending production number for a given file/Document | ABC0000003 |
| BEGATTACH | Production number of first page of parent | ABC0000001 |
| ENDATTACH | Production number of last page of last attachment | ABC0000008 |

| FIELD NAME | FIELD DESCRIPTION | EXAMPLE/FORMAT |
|---|---|---|
| CUSTODIAN | an individual or entity repository that has administrative control of ESI and from whom ESI were collected | Doe, John |
| DUPLICATE CUSTODIAN | To identify other Custodians whose files contained a particular Document that was eliminated through exact match HASH value de-duplication | Doe, John |
| DUPLICATE FILEPATH | Folder locations of Documents held by other Custodians whose copy of the Document was not produced based on exact match HASH value de-duplication. Folder names shall be delimited by semicolons | Mydocuments\resume.docx; C:\Mail\Outlook.pst |
| FILEEXT | File extension | docx |

| FIELD NAME | FIELD DESCRIPTION | EXAMPLE/FORMAT |
|---|---|---|
| HASH | The MD5 Hash value or "deduplication key" assigned to a Document. | 9CE469B8DFAD1058C3B1E745001158EA |
| META_REDACT | This field identifies whether a Document has had requested metadata field information redacted or withheld from production | Yes / No |
| ATTACHNAME | The file name(s) of attachments to a parent Document (separated by a semicolon) | resume.msg |
| EMAILSUBJECT | Email subject line | Re: resume |
| FROM | Email Sender | John Doe <jdoe@acme.com> |
| TO | Email Recipient | Jane Smith<jsmith@acme.com> |
| CC | Email Copyee | Bob Johnson<bjohnson@acme.com>; Sally May <smay@acme.com> |
| BCC | Email Blind Copyee | John Doe <jdoe@acme.com> |
| DATESENT | Date Sent & Time | (MM/DD/YYYY HH:MM) |

13

| FIELD NAME | FIELD DESCRIPTION | EXAMPLE/FORMAT |
|---|---|---|
| DATERECEIVED | Date Received & Time | MM/DD/YYYY  HH:MM:SS |
| DATELASTMOD | Date modified & Time | MM/DD/YYYY  HH:MM:SS |
| DATECREATED | Date created & Time | MM/DD/YYYY  HH:MM:SS |
| TITLE | Any value populated in the Title field of the document properties | Resume.docx |
| SUBJECT | Any value populated in the Subject field of the Document properties | Re: resume or "Quarterly Planning" |
| AUTHOR | Any value populated in the Author field of the Document properties | Doe, John |
| LASTMODIFIEDBY | Any value populated in the last modified by field of the Document properties | Doe, John |

| FIELD NAME | FIELD DESCRIPTION | EXAMPLE/FORMAT |
|---|---|---|
| ITEMTYPE | Identifies whether the file is an email, attachment to email, or loose edoc | E-mail,and E-Doc |
| REDACTION | Identifies whether the file was redacted | Yes/No |
| CONFIDENTIAL | Identifies whether the file is designated confidential | Yes/No or denoted with CONFIDENTIAL or BLANK |
| FILENAME | Original file name | Document Name.xls |
| FILEPATH | Original file path to the file or e-mailbox folder structure | My documents\resume.docx; C:\Mail\Outlook.pst |
| NATIVEFILE | Path to Native File as produced | \NATIVES\001\ABC0000001.htm |
| TEXTPATH | Path to OCR or extracted text file | \TEXT\ABC000001.txt |
| PGCOUNT | Total number of pages for a Document | 00006 |
| ATTACHCOUNT | Number of attachments within a Document family | 0 (Numeric) |

| FIELD NAME | FIELD DESCRIPTION | EXAMPLE/FORMAT |
|---|---|---|
| APPLICATION | Type of Document by application | MS Word, MS Excel, etc. |
| COMMENTS | Document comments entered by the author | "First Draft" |
| FILESIZE | Size of the file in KB including embedded attachments | 125256 |
| IMPORTANCE | E-mail Importance Flag ($0$ = Normal, $1$ = Low Importance, $2$ = High importance | 0 or 1 or 2 |
| PARENT_CHILD | Indicates whether a Document is a parent, child, or standalone | Parent |
| DATELAST PRINTED | Date and Time last printed | MM/DD/YYYY HH:MM:SS |
| CONVERSATION | Normalized subject of email messages. | |
| CONVERSATION INDEX | Organizing Email Threading | |
| PRODVOLUME | Volume number of production | |

16

M.  **Databases:**  A Party possessing databases that contain relevant information shall produce the information in Excel, .CSV, Access, or any format in which files are normally exported from the respective database, or any other format to which the Parties mutually agree, except where the Requesting Party can show particularized need for another format. The Parties agree to meet and confer in good faith regarding discovery from relevant and proportional databases.

N.  **GIS Data:** The Parties agree that any GIS data (vector and raster data) shall be produced as a package and in the form it exists in the ordinary course of business. If new GIS data is prepared for this litigation, to the extent such data is discoverable, the Parties shall meet and confer to discuss the file format. The GIS files should be placed in a folder with a Bates number as the name of the folder and then zipped. The GIS data file names themselves should not be renamed with ID codes and disseminated through an e-discovery platform, as this damages the data's file structure, often making it unreadable.

O.  **Embedded Objects:** OLE embedded objected (e.g., embedded MS Office files, etc.) shall be extracted as separate Documents and treated like attachments to the parent documents. Independently unresponsive graphic objects embedded within ESI (e.g., logos, signature blocks, and backgrounds) shall not be extracted and produced as attachments to the parent document. However, independently responsive graphic objects embedded within ESI (e.g., graphics, diagrams, or charts) shall be extracted and produced like attachments to the parent document.

P.  **Redaction:** If a file that originates in ESI needs to be redacted for privilege before production, the file will be rendered in TIFF, and the TIFF will be redacted and produced. The Producing Party will provide searchable text for those portions of the Document that have not been redacted. Any redaction applied to a Document for privilege should be clearly visible on the face of the TIFF image (e.g., black boxes on white pages or outlines around white boxes) so that the

area that has been redacted for privilege can be clearly identified.

Q. **Parent-Child Relationships for ESI Documents:** Parent-child relationships shall be preserved to the extent possible. However, non-responsive family members may be excluded from production. A Bates numbered placeholder will be provided for any document withheld pursuant to this section and shall state that a non-responsive attachment has been withheld from production. Attachments are to be produced contemporaneously and sequentially immediately after the parent document. Documents that are associated by hyperlink or otherwise linked to another location or file without being embedded will not be treated as attached files and will not be produced as if attachments in order behind the document in which they were referenced by link. Such documents will be treated in accordance with their originating location and collected, processed, and produced as governed by the relevant procedures and protocols as outlined in this order for each document's file type and data source. The parties agree to meet and confer should additional information be needed for specific produced documents containing hyperlinks.

R. **Preservation Not Required for ESI That Is Not Reasonably Accessible:** The Parties need not preserve the following categories of ESI for this Litigation:

1. Data stored in a backup system for the purpose of system recovery or information restoration, including but not limited to, disaster recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely deleted or written over in accordance with an established routine system maintenance practice;

2. System or executable files (.exe, .dll, etc.);

3. Structural files not material to individual file contents that do not contain substantive content (.css, .xsl, .xml, .dtd, etc.);

18

4.   Data remaining from systems no longer in use that are unreadable on the systems in use;

5.   Deleted computer files, whether fragmented or whole (nothing in this order authorizes the intentional deletion of ESI after the duty arose to preserve such ESI);

6.   Data stored in random access memory ("RAM"), cache memory, or in temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

7.   Data stored on photocopiers, scanners, and fax machines;

8.   Server, system, or network logs;

9.   Electronic data temporarily stored by scientific equipment or attached devices, provided that the data that is ordinarily preserved is, in fact, preserved; or

10.   Voicemail messages, instant messages, or text messages on or related to personal computers or personal devices (including mobile phones, unless the mobile phones are used for business purposes or reflect data relevant to the injuries alleged).

Nothing in this Stipulation prevents any Party from seeking a protective order, in accordance with Federal Rule of Civil Procedure 26(c), asserting that other categories of ESI are not reasonably accessible and therefore should not be preserved and/or produced.

**IV.   Production Format – Hard Copy Documents**

To the extent the Producing Party has, whether in its discovery responses and/or during the meet and confer process with respect to a specific discovery request(s), expressly and in writing

agreed to scan and convert into electronic format paper records and Documents that exist only in hard-copy format, it will do so in the following format.[1]

A. **Imaged File:**

1. Single-page 1-Bit Group IV TIFF images shall be provided using at least 300 X 300 DPI resolution and 8 ½ X 11 inch page size, except for Documents requiring different resolution or page size. The Requesting Party retains the right to request a TIFF image in a higher resolution or larger page size if necessary to render the image legible or reasonably usable. Each image shall have a unique file name, which is the Bates number of the Document. Original Document orientation shall be maintained (i.e., portrait to portrait and landscape to landscape).

2. The Producing Party will selectively identify which of its color-containing Documents should be produced in color including, but not limited to, any images (unless only appearing in a company logo, email signature block or similar), graphs, charts, maps, Autocad files, photographs, posters, government reports, and Documents containing text in different colors. These selected colored Documents will be produced in JPEG format. If an original Document contains color text, markings, or graphics, and it is necessary to see those items in their original color to understand the full meaning or content of the Document, and the Producing Party has not already provided that Document in color, then the Receiving Party may, in

---

[1] For the avoidance of doubt, where appropriate, any Party has the right to offer to produce discovery material by making them available for inspection and copying consistent with Federal Rule of Civil Procedure 34(b)(2)(B). Nothing herein is intended to waive, and the Parties expressly preserve, this right. To the extent a Party accepts an offer for an inspection, it shall provide versions of the Hard Copy Documents that it copies or scans to the Party making them available for inspection that comply with Section IV.A-B, but shall not be required to comply with the additional requirements of Sections IV.C-D.

good faith, request that the Document be produced in color format. The Producing Party will not unreasonably deny such a request.

3.  In scanning paper Documents, distinct Documents shall not be merged into a single record, and single Documents shall not be split into multiple records (i.e., paper Documents should be logically unitized). In the case of an organized compilation of separate Documents–for example, a binder containing several separate Documents behind numbered tabs–the Document behind each tab should be scanned separately, but the relationship among the Documents in the binder should be reflected in proper coding of the beginning and ending Document and attachment fields. The Parties will use common sense to unitize Documents correctly.

4.  Bates numbers shall be branded to the images so that the numbers print.

5.  The Producing Party will brand all TIFF images in the lower right-hand corner with a Bates number that shall always: (1) be unique across the entire document production, (2) maintain a constant length (zero/0-padded) across the entire production, (3) contain no special characters or embedded spaces, (4) be sequential within a given document, and (5) stamped onto the TIFF image in such a manner that information from the source document is not obliterated, concealed, or interfered with. Productions made after entry of this Production Protocol must not contain "PCB" or "Monsanto" in the Bates prefix/numbers. If a Bates number or set of Bates numbers is skipped in a production, the producing party will disclose the Bates numbers or ranges in a cover letter accompanying the production. The Producing Party will brand all TIFF images in the lower left-hand corner with

"Confidential" designations, as needed, in accordance with the Stipulated Protective Order.

6.      The Requesting Party may only request production of originals of Documents in circumstances where a TIFF or JPEG image is not an adequate representation of the Document. If this occurs, the Requesting Party will provide the Producing Party with a request for access to the original Document, which must include an explanation of why the TIFF or JPEG image does not adequately represent the original Document. Upon receipt of that request, the Producing Party will not unreasonably withhold access to the original Document.

B.  **Image Load/Unitization Files:**

1.      An image load file/unitization file, in a standard Opticon format (OPT) or LOG litigation support image load format, shall accompany all Document images and provide:

a.      the document number for each image;

b.      the full path name(s) of each image file that represents a document page;

c.      the document boundaries for each document;

d.      the load file shall be in the order that appropriately corresponds with each image file;

e.      the following represents the format of a standard OPT or LOG image load/unitization file:

Bates,Volume,PATH_to_image,Document Break,Folder Break,Box Break,Total_Pages.

M_0100000,06150101,\06150101\0000\0001.TIF,Y,,,l
M_0100001,06150101,\06150101\0000\0002.TIF,Y,,,l
M_0100002,06150101,\06150101\0000\0003.TIF,Y,,,l
M_0100003,06150101,\06150101\0000\0004.TIF,Y,,,2
M_0100004,06150101,\06150101\0000\0005.TIF,,,,
M_0100005,06150101,\06150101\0000\0006.TIF,Y,,,l

M_0100006,06150101,\06150101\0000\0007.TTF,Y,,,4
M_0100007,06150101,\06150101\0000\0008.TIF,,,,,
M_0100008,06150101,\06150101\0000\0009.TIF,,,,,
M_0100009,06150101,\06150101\0000\0010.TIF,,,,,

C.   **OCR/Extracted Text File:** An OCR text file which corresponds to each imaged Document shall be provided as follows:

    1.   Document level OCR files will be found in a folder entitled TEXT;

    2.   The OCR file name shall be the same name of the first image page for the Document set, followed by .txt.

D.   **Associated delimited database:**

    1.   A delimited text file (.DAT or .CSV) containing the fields listed in the table included in Section IV.D.2 below should be provided. The delimiters for the file can be Concordance defaults, but defined delimiters are acceptable: Comma - ASCII character 20 ( ); Quote - ASCII character 254 (þ); Newline - ASCII character 174 (®).

    2.   The fielded data should include all the below metadata fields for a file/Document in addition to the unitization (including the production number of the first and last page of each Document) and attachments (including information sufficient to identify the parent-child relationships of all Documents that are or have attachments as captured by any hard copy binding). The first line of the data load file should contain the field headers indicating the contents of each field, and each subsequent line should contain the fielded data for each Document. Load files shall include the below metadata fields, or substantially identical metadata fields, to the extent already in existence and reasonably accessible.

| FIELD NAME | FIELD DESCRIPTION | EXAMPLE/FORMAT |
|---|---|---|
| BEGBATES | Beginning production number for a given Document | ABC0000001 |
| ENDBATES | Ending production number for a given Document | ABC0000003 |
| CUSTODIAN | an individual or entity repository that has administrative control of Documents and from whom Documents were collected | Doe, John |
| CONFIDENTIAL | Identifies whether the file is designated confidential | Yes/No or denoted with CONFIDENTIAL or BLANK |
| REDACTION | Identifies whether the file was redacted | Yes/No |
| TEXTPATH | Path to OCR text file | \TEXT\ABC000001.txt |
| BEGATTACH | The production Bates number associated with the first page of the parent Document | ABC0000001 |
| ENDATTACH | The production Bates number associated with the last page of the last attachment in the Document family. | ABC0000008 |
| PGCOUNT | Total number of pages for a Document | 00006 |

## V.    Production Media

A.    **Production Media:**   Documents shall primarily be produced via secure file share/FTP; however when the size of the production prohibits an electronic transfer, a hard drive production is acceptable. Each production shall be accompanied by a Production Letter setting

forth the date and scope of production, and shall contain a Production Index, which shall be updated with each production, setting forth the date, and Bates ranges.

      B.     **Naming:** Each Production Media must have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001).

      C.     **File Directory Structure:** The root folder on the Production Media should be labeled after the delivery volume. Under the root folder should be four sub-folders:

          1.     DATA – contains metadata, OPT, LOG and other load files.

          2.     IMAGES – contains image files, with no more than 2,000 images per subfolder.

          3.     NATIVES – contains Native Files, with no more than 2,000 natives per subfolder.

          4.     TEXT – contains text files, with no more than 2,000 document level text files per subfolder.

      E.     **Encryption:** The Producing Party shall encrypt the production data using WinRAR or 7-Zip encryption, and the Producing Party shall forward the password to decrypt the production data separately from the CD, DVD, external drive or FTP to which the production data is saved.

      F.     **Viruses:** All productions should be checked for computer viruses.

**VI.**    **Data Security:** The Parties will ensure that third-party vendors hosting data produced in this litigation shall maintain the appropriate level of data security in an effort to prevent a security breach of protected or proprietary information, and pursuant to the Stipulated Protective Order.

VII.    **Privilege Logging**

      A.      The Producing Party will produce a privilege log that includes at least the following fields: Date; Author; Recipient; CC; Document Type; attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege asserted; and the basis for such assertion.

      B.      The privilege log for an email and its attachments withheld under a claim of privilege or work product shall identify information required in paragraph VII.A based on metadata from the top-level message, unless redacted. In the event the top-level message is redacted, the most top-level message meta-data information shall be provided. However, if an e-mail contains both privileged and non-privileged communications, the non-privileged communications must be produced. This requirement should be satisfied by producing the original of the embedded, non-privileged e-mail, but if the original is not available, it may be satisfied by producing a redacted version of the privileged e-mail. To the extent a Producing Party withholds email communications or messages that are included within one individual email thread, and each email communication or message within the individual thread is subject to the same assertion as privileged information, the Producing Party may include only a single privilege log entry for multiple email messages contained in the same email thread. The email message that will be logged will be the most inclusive thread.

      C.      The following documents presumptively need not be included on a privilege log:

            1.      Communications exclusively between a Plaintiff and his/her/its Litigation counsel regarding this Litigation within three (3) years of filing of the Litigation and thereafter;

2. Communications exclusively between a Defendant and its litigation counsel regarding the PCB Litigation[2];

3. Communications between Plaintiff's litigation counsel and experts, consultants, and litigation support personnel regarding the prosecution of this Litigation;

4. Communications between Defendants' litigation counsel and experts, consultants, and litigation support personnel regarding the defense of the PCB Litigation;

5. Work product created by Plaintiff's litigation counsel in anticipation of this Litigation within three (3) years of filing of the Litigation and thereafter;

6. Work product created by Defendants' litigation counsel in anticipation of the PCB Litigation; and

7. Produced documents with redactions for attorney-client privilege, work product doctrine, or any other applicable protection or privilege, provided the reason for the redaction appears on the redaction label, and provided the unredacted portion provides information sufficient to allow the Receiving Party to assess the claim of privilege.

## VIII.   Format of Prior Productions

Documents that were previously processed and produced in another litigation or in response to governmental or regulatory inquiries or investigations may be produced in the same format as they were produced in that particular litigation, inquiry, or investigation, regardless of

---

[2] "PCB Litigation" shall mean litigation filed against Defendants alleging, pursuant to various legal theories, that polychlorinated biphenyls and/or PCB-Containing products have caused harm or have the potential to cause harm to persons, property, or the environment.

whether the format complies with the other specifications described herein. The Receiving Party may thereafter request a meet and confer regarding the format of any production made pursuant to this provision. Nothing in this Production Protocol obligates a Party to produce previously collected, processed, or produced Documents.

## IX.    General Provisions

A.    **ESI Liaison:** Each party will identify liaisons to each other who are and will be knowledgeable about and responsible for discussing each party's respective ESI concerns. Each e-discovery liaison will be, or have ready access to individuals who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter.

B.    **Resolution of Disputes:** The Parties agree to meet and confer in good faith regarding matters related to the production of ESI or Hard Copy Documents not specifically set forth in this Production Protocol, related to the interpretation of this Production Protocol, or related to the Parties' obligations thereunder. The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Production Protocol. If a Producing Party cannot comply with any material aspect of this Protocol, such party shall inform the Requesting Party in writing at or before the time of production as to why compliance with the Production Protocol is unreasonable or not possible. If the Parties are unable to reach resolution regarding any dispute concerning the interpretation of this Production Protocol or compliance with same, such disputes may be presented for judicial resolution. No party may seek judicial relief concerning the Production Protocol unless it first has conferred with the applicable Producing or Requesting Party.

C.    **Limitation:** Nothing in this Production Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client

28

privilege, work-product doctrine, or any other applicable privilege or immunity.

**APPROVED and SO ORDERED:**                      /s/ Geoffrey W. Crawford
                                                  United States District Judge


Date: ___18 September 2024_____


Stipulated and Agreed:

**PLAINTIFF**                          **DEFENDANTS**

By: */s/ Alex Rudenco*                 By: */s/ Hannah C. Waite*
**MILBERG COLEMAN BRYSON**             **SHEEHEY FURLONG & BEHM P.C.**
**PHILLIPS GROSSMAN LLC**              Ian P. Carleton
Alex Rudenco                           Devin T. McKnight
800 S Gay Street, Ste 1100             Alexandrea L. Nelson
Knoxville, TN 37929                    Hannah C. Waite
865-247-0080                           30 Main Street, 6th Floor, PO Box 66
arudenco@milberg.com                   Burlington, VT 05402-0066
                                       (802) 864-9891
                                       icarleton@sheeheyvt.com
                                       dmcknight@sheeheyvt.com
                                       anelson@sheeheyvt.com
                                       hwaite@sheeheyvt.com